(No. 4765

JOHN FURRY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 26, 1959.*

JOHN S. GILSTER, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

Claimant, John Furry, filed a complaint in this Court on March 6, 1957, for the recovery of damages to his left knee sustained in an accident, which occurred on March 11, 1955, while he was an inmate of the Illinois State Penitentiary at Menard, Illinois, serving a term from two to ten years.

On March 11, 1955, claimant was assigned to a detail to pick up loose rocks and place them in a car for removal to a rock crusher. The day previous, respondent's agents and employees had blasted rock from a hill immediately above where claimant was working.

Apparently all of the loose rock on the hill above had not been removed or pushed to the ground below, where claimant and other inmates were working the following day, so that while claimant was so engaged and standing within 15 to 20 feet from the base of the cliff, a large rock, described as being approximately 300 to 500 lbs. in weight, fell from the cliff above.

It was the practice of the authorities in directing this work to be done to have the blasting operation followed by a clean up gang, who would remove and fell to the ground below all loose rocks, using crowbars to displace the rock, which might become disengaged and fall while the men were working below.

Claimant testified, and it was uncontradicted by respondent, that, after blasting operations the day before, the clean up gang did not remove the loose rock, and thereby provide a safe place for claimant and the other inmates to work the following day.

The negligence charged is that respondent assigned claimant to work in a place without providing safe conditions and failure to follow approved quarry practices.

Other charges of negligence of respondent were also alleged in the complaint.

No answer having been filed by respondent under Rule 11 of this Court, a general traverse or denial of the facts shall be considered as filed.

Respondent did not offer any testimony at the hearing of this case before the Commissioner, but filed a Departmental Report, which is summarized as follows:

On March 11, 1955, at 8:45 A.M., John Furry was struck on the left knee by falling rock from overhead, while assigned to the quarry at the Illinois State Penitentiary at Menard, Illinois.

In obedience to an order of respondent's agents he entered upon the performance of his work in the quarry, which consisted of picking up loose rocks, which had been blasted from the ground. He was then supposed to deposit them in cars to be conveyed to the rock crusher.

There is also attached to the Departmental Report an accident report with letter written by Dr. D. S. Wham, M.D., prison physician, directed to Mr. Ross V. Randolph, warden of the institution, dated April 5, 1957. Summarizing the report, the doctor says that Mr. Furry was brought to the prison hospital on March 11, 1955 after injuring his left knee in the quarry. His examination revealed a laceration on the left knee, which was leaking synovial fluid, indicating that the injury had penetrated the joint cavity. Treatment given at the time was the cleansing and suturing of the wound. Claimant was examined also by Dr. Weatherly, who examined the knee in April, 1955. His diagnosis was that a milk synovitis was present.

In May, 1955, further treatment of the knee was given because of further damage to it, which occurred

when claimant was running; and at that time 40 cc of bloody fluid was withdrawn. In the meantime, he received treatment to the knee for residual discomfort and stiffness.

The report of Dr. Wham, dated April 5, 1957, indicated that a physical examination revealed pain, stiffness and weakness of the left knee with mild instability and a moderate limp while walking. There was no swelling or inflammation around the joint, and an x-ray taken on April 5, 1957 showed an essentially normal knee joint with no evidence of inflammation or roughening of the joint surface.

Dr. Wham's diagnosis was as follows:

"Mild chronic synovitis of the left knee with a possible element of intra-articular and peri-articular soft tissue derangement. Much of the weakness is due to disuse atrophy, due to favoring the injured knee. Disability is minimal."

Claimant was examined by Dr. Francis E. Bihss, who made a radiographic examination of the left knee, and reported:

"Reveals a deformity noted through the outer portion of the condyle of the tibia, with some irregularity of the tibial spines. There is marked narrowing of the joint space between the lateral condyle of the tibia and the femur, indicating that there was an injury, probably, to the outer condyle of the tibia; however, the fracture line was not demonstrable at this examination. There is definite narrowing of the joint space between the lateral articulating portion of the femur and that of the condyle of the tibia."

It was suggested at the time of the trial that an orthopedic surgeon be called in to examine claimant.

This examination was made by Drs. Kilian F. Fritsch, Bart Cole and Lloyd Hill. This medical report was admitted in evidence, and reveals the following facts:

Claimant was examined in the doctors' office on January 21, 1958. At the time of this examination, claimant stated that he had experienced locking of the knee; that the first thing in the morning the knee feels like it is going to buckle on him; that there is numbness around the knee joint; and, that the patient has not worked since his discharge. At the time of the examination he was still wearing an elastic bandage.

The doctors' objective findings were that there was a scar 4 inches long over the medial side of the left knee, and that there is no lateral but some medial instability of the knee. There is no anterior or posterior instability. When he stands with the knee slightly flexed, there is some instability of the medial side of the knee joint. There was no fluid in the knee joint at the time of the examination. Claimant stated to the doctors that he has some suffering in the left knee intermittently. There is complete flexion. From the measurements made, there appears to be no atrophy of the left leg. Subjectively, the patient stated that he has had quite a bit of trouble with the left knee, and it locks on him at times, which indicates some injury to the medial knee cartilage, and a weakness of the medial collateral ligaments of the knee joint.

The doctors recommended that claimant should do quadriceps exercises, and use progressive resistance with weight lifting.

An x-ray taken at the time of the examination showed some deformity of the outer condyle of the tibia, and that there was a narrowing of the joint line laterally.

The medial collateral ligaments were relaxed as a result of the tear and injury. The doctors estimated that claimant had about a 25% to 30% residual disability in the left leg.

Claimant testified that he was 28 years of age, and that his employment at the time he was committed to the penitentiary was a machinst and molder. His earnings were in excess of $2.00 an hour. Since the injury, he has been unable to stand on his leg for any considerable length of time, because of the weakness in his left knee. There is no evidence of a previous injury to the knee, which could be considered as a contributing factor.

From an examination of the record, which includes the Departmental Report and briefs and arguments submitted by both plaintiff and respondent, we believe that claimant has maintained the burden of proof in this case, and has established:

First: He was not guilty of contributory negligence.

Second: Respondent's agents, the guards in charge of the duties assigned to claimant and others, were negligent in that they permitted the blasting of the rock above where claimant was working on the day of the accident without assigning a detail to clean up all of the loose rock before permitting claimant and others to work within 15 feet of the cliff.

Third: Claimant did suffer damage with approximately a 25% disability to his left leg by reason of the injury to his knee.

It is rather difficult to arrive at an amount for an award to be given claimant, inasmuch as this is not a compensation matter, but rather a common law action authorized by the laws of this State, made and provided thereby. This Court so held in the case of *McElyea* vs. *State of Illinois,* 7 C.C.R. 69.

There is no evidence as to what type of work claimant might do, and what he might earn upon being released from the penitentiary. From the record it appears that he was to be released the month following the date of the trial, which would have been in January of 1958.

We have no evidence as to loss of earnings due to the fact that he was confined to the penitentiary at the time of the hearing. If we were to use the compensation act as to a percentage of the loss of use of leg, we still would have to have a weekly rate in order to arrive at a fair and just amount for the injury.

Under the circumstances, it makes it somewhat speculative to arrive at a fair amount. The amount of the award will have to be based upon the medical testimony as to the limitation claimant has in his left leg, and the pain and suffering endured by him, and, in addition, consideration will have to be given to the length of time he was hospitalized. We are inclined to agree with the Commissioner, who recommended an award of $2,500.00 to this Court.

It is, therefore, the order of this Court that an award be made to claimant, John Furry, in the amount of $2,500.00.